UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

ISAIAH BEASLEY,

        Defendant.

Case No. 20-cr-162-pp

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DKT. NO. 56) AND DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 38)**

On June 25, 2022, the defendant filed a motion to suppress the evidence obtained from the search of his "alleged" Snapchat accounts. Dkt. No. 38. The defendant argued that the affidavit supporting the warrant to search his accounts "wholly failed to establish a nexus between those accounts and *any* illegal activity." Id. at 1. The government opposed the motion, dkt. no. 49, and Magistrate Judge Stephen C. Dries issued a report recommending that this court deny the motion, dkt. no. 56. While the defendant filed objections to the recommendation, dkt. no. 59, the government did not respond to those objections. Because the court finds that Judge Dries had a substantial basis for concluding that probable cause existed for the search and that the good faith exception would otherwise have saved the warrant, the court adopts the recommendation and denies the motion to suppress.

1

**I.     Standard of Review**

Federal Rule of Criminal Procedure 59(b) governs a district court's referral of motions to suppress to magistrate judges. Parties have fourteen days to file "specific objections" to a magistrate judge's report and recommendation to a motion to suppress. Fed. R. Crim. P. 59(b)(2). When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the portions of the recommendation to which a party timely objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

**II.    Background**

   A.    Factual Background

Wisconsin Department of Justice Special Agent Dennis Carroll of the Division of Criminal Investigation applied for a search warrant compelling several communications providers, including Snap, Inc. (the operator of Snapchat), to turn over records. Dkt. No. 38-1 at 4. In support of the application, Carroll submitted an affidavit describing his work as an officer for twenty-five years, his education and his training. Id. at ¶1. He explained that Detective Paul Olsen of the Sheboygan Police Department had contacted Carroll about an investigation of a drive-by shooting that occurred in Sheboygan on May 4, 2019. Id. at ¶2. The investigation progressed from the shooting, which had drug ties, to the identification of a major Drug Trafficking Organization (the "Sosa DTO") operating in Sheboygan. Id. Carroll filed what is

2

referred to as a "rolling affidavit," which provides information from the initial investigation leading up to and including the evidence that provides probable cause for the additional legal demands in the current investigation. Id. at ¶3.

In the early morning of May 4, 201, police received several 911 calls, with witnesses reporting bullet holes through the walls and a window of a residence located at 1009 Superior Street in Sheboygan. Id. at ¶4. Officers recovered seven spent shell casings from the road in front of that address and located seven bullet holes in the front of the residence. Id. at ¶5. All the casings were brass Remington .22 caliber casings. Id. One witness who had heard the shots reported subsequently seeing a white SUV with dark-tinted windows. Id. at ¶6. A nearby residence, 1016 Superior Avenue, had video surveillance; it showed a white SUV with dark-tinted windows driving on Superior Avenue around the time of the shootings and the audio captured the sound of gunshots. Id. at ¶7. Another home security system on North 10th Street also captured the vehicle. Id. at ¶9. Officers found a vehicle matching the one captured on the video on North 11th Street. Id. at ¶10.

Detective Olson determined that at the time of the shooting, Sheldon P. Resop lived in the upper unit of 1011 Superior Avenue; Resop was considered a victim in the shooting investigation and a co-conspirator in the drug investigation. Id. at ¶11. Three days later, Resop told Olsen that Resop believed he was the intended victim of the shooting, possibly in retaliation for testifying against Deontre Smith at a jury trial in November 2018. Id. At a second interview with Resop on May 8, 2019, however, Resop told Olsen and Detective

3

Walsh that he was "very certain" the defendant was the shooter because Resop owed the defendant $250 for a cocaine deal and the defendant had texted him "don't f*** with my money G." Id. At Detective Walsh's direction, Resop placed a phone call to the defendant, which officers recorded, and Resop identified the voice of the defendant. Id.

Olsen contacted Special Agent Carroll two days after the shooting. Id. at ¶2. Carroll knew of the defendant from a 2014/2015 drug investigation, considering him a "known significant drug dealer in Sheboygan County." Id. at ¶15. In 2015, the defendant had been arrested and charged with possessing and discharging a firearm and with drug offenses. Id.

In the affidavit, Carroll included extensive details about the investigation. He tied the vehicle used in the shooting to the Sosa DTO and identified the defendant as the shooter. Id. at ¶¶6 (Witness RGR heard shots and saw a white SUV with dark-tinted windows after hearing them), 9 (home surveillance system at 1514 N. 10th Street in Sheboygan captured white SUV with dark-tinted windows between 2:03 and 2:06 a.m.), 10 (detectives located a white SUV with dark-tinted windows in front of 1921 N. 11th Street, with license plate AEX-9963 registered to Ariel L. Koepke), 13 (enhancement of surveillance video from 1514 N. 10th Street showed driver on cell phone waiting for unknown subject, who arrived with what appeared to be an AR-15 rifle; vehicle had third brake light, chrome edges on step bar and roof rack, front fog lights, tinted windows, and back left tire missing center cover for hub cap—all similar to the vehicle parked in front of 1921 N. 11th Street), 14 (on May 4, 2019, after

4

the shooting, officers observed a white Escalade with license plate AEX-9963 parked in front of 1921 N. 11th Street and saw that it had a hockey-style mask inside), 15 (information from Olsen and Walsh that the defendant had been identified as the shooter), 21 (Ariel Koepke told officers that she had been paid $1,000 to register the Cadillac Escalade in her name for Omar Sosa), 22 (tracing history of registration of Cadillac Escalade back to Koepke), 30 (May 20, 2019 search of Escalade revealed that "Omar's phone" had been linked to it; Omar Sosa was believed to have been the person caught on video going to the vehicle from 1924 N. 11th Street later on the day of the shooting), 31 (May 24, 2019 search of Omar Sosa's residence revealed evidence of Sosa's drug dealing). Carroll also included Olsen's interview with Hiram Becerra, whose car police had seen leaving the defendant's residence during surveillance on May 17, 2019—Becerra told officers that another individual had said, "[the defendant] and them," then motioned with his hands in the shape of a gun, indicating that the defendant had "done a shooting." Id. at ¶28. Carroll included the fact that during one of her interviews with police, Koepke told him that Sosa used Snapchat with the account name "Scloud300." Id. at ¶38. Carroll further discussed the proffer statement of the defendant's neighbor, Manuel Amador, who had heard details of the drive-by shooting from the defendant; had been paid (along with Becerra) to access the white SUV and remove from it titles and other information that would have identified Sosa as well as a mask worn during the shooting; and who moved the vehicle (activating the GPS and allowing investigators to track it). Id. at ¶40.

5

Carroll included Olsen's interview with Aja Buss, who identified herself as the defendant's current girlfriend and who described her relationship with the defendant. Id. at ¶46. Buss said she communicated with the defendant via Snapchat and that his user name was "Zaethekid." Id. She stated that she'd been sleeping over at the defendant's residence the night of the shooting and that she later heard Omar Sosa discussing something that had happened with Omar's white Escalade (the one identified with the shooting). Id. Carroll spoke with an anonymous informant who had provided accurate and reliable information in the past, who saw the defendant in Milwaukee and said that the defendant was known to use the Snapchat name "Zaethman"[1] in the months prior to July 2019. Id. at ¶47.

Carroll spoke with a person incarcerated in the Brown County Jail who said he knew the defendant and had bought cocaine from him approximately ten times. Id. at ¶50. The incarcerated person provided information about prior contacts, identified the defendant's photo and consented to the search of his phone. Id. Carroll explained why the phones were requested as part of the affidavit, as well as how cellular phones often are used by people selling and obtaining drugs. Id. at ¶65.

Under the heading "PHONE RECORDS," Carroll explained that the investigation of the drive-by shooting and drug debt motive for the shooting identified several individuals, including the defendant. Id. at ¶68. Carroll

---

[1] This may be a typo; other places in the affidavit, Carroll spells the name "Zaetheman."

6

Case 2:20-cr-00162-PP   Filed 01/24/22   Page 6 of 19   Document 84

identified telephone numbers with which the defendant had phone or text contact during the relevant period, and explained that these numbers were important to the "investigation of the drive-by-shooting that was done by Beasley and Omar Sosa in the timeframe of 2 a.m. to 3 a.m. on 5/4/2019, identified cocaine and marijuana drug distribution of Isaiah Beasley during that date range and the conspiratorial drug distribution of the Sosa DTO, et al that included Beasley." Id. at ¶72.

A separate section, titled "SNAPCHAT," included a description of how Snapchat is designed, why it is popular among those involved drug dealing, and that defendant's account had been identified as Zaethekid and Zaetheman. Id. at ¶¶77, 78. Carroll stated, "The information sought from Snapchat will assist in identifying communication detail and in linking, connecting and corroborating people as a part of the DTO and shooting investigation." Id. at ¶78.

Sheboygan County Circuit Court Judge Kent Hoffman authorized the warrant the same day that Carroll submitted the affidavit. Dkt. No. 38-1 at 1-2. Among other things, the warrant compelled "Snapchat Inc." to turn over its records from January 1, 2018 through August 12, 2019 for the defendant and Sosa. Id. Carroll confirmed that Snapchat provided the records, including the records for "Zaethekid" and "Zaetheman." Id. at 3.

On September 9, 2019, the grand jury returned a three-count indictment against the defendant and six others. Dkt. No. 1. The indictment charges the defendant with two counts: (1) knowingly and intentionally conspiring to

7

distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule I controlled substance, and a mixture of cocaine, a Schedule II controlled substance, under 21 U.S.C §§841(a)(1), 841(b)(1)(A)(C) and 846; and (2) possession of firearms during and in relation to the cocaine trafficking conspiracy under 18 U.S.C. §924(c)(1)(A)(i).

B.     Motion to Suppress

The defendant filed a motion to suppress, arguing that the warrant was invalid because the supporting affidavit lacked probable cause. Dkt. No. 38 at 1. The defendant argued that the affidavit mentioned the alleged Snapchat accounts in only two sentences: (1) where the defendant's girlfriend told law enforcement that her "communications with Beasley were via Snapchat and she said his user name is Zaethekid;" and (2) where an anonymous informant told law enforcement that the defendant used the name "Zaetheman" in the months prior to July of 2019. Dkt. No. 38 at 2.

The defendant also argued that the affidavit failed to show the reliability of the two informants. Citing United States v. Glover, 755 F.3d 811, 816 (7th Cir. 2014), the defendant argued that five reliability factors weighed in favor of suppression. He asserted that the affidavit provided no details regarding the relevance of the accounts to the alleged criminal activity. Id. He argued that the two people who provided information had no firsthand knowledge that the defendant used his Snapchat accounts for illegal activity. Id. at 3. He claimed that there was no corroboration between the defendant's alleged girlfriend and the informant. Id. He argued that the affidavit did not indicate when law

8

enforcement met with the informant. Id. Finally, he argued that nothing indicated that the informants had testified before a judge. Id. at 4. The defendant added that the general statements about Snapchat being used to support drug activity did not support a probable cause finding. Id.

The defendant included a second argument—that the good-faith exception under United States v. Leon, 468 U.S. 897 (1984) could not save the alleged defects in the warrant. Based on the two sentences cited above, the defendant maintained that no reasonable officer would believe that he or she had probable cause to search the Snapchat accounts. Id. at 6.

The government responded that the defendant had failed to make the necessary showing that the search warrant lacked probable cause or that the issuing magistrate had abandoned his neutral and detached judicial role. Dkt. No. 49. The government asserted that the information in Carroll's affidavit would allow the issuing judge to make reasonable inferences that the defendant was a drug trafficker and that evidence of his drug trafficking would more than likely be found on his cellular phone and social media accounts. Id. at 4. Alternatively, the government argued that the motion should be denied under the good-faith exception. The government argued that the twenty-eight-page affidavit documented the defendant's involvement in drug trafficking and the defendant's use of a cell phone to communicate with his drug associates. Id. at 5.

C.  Recommendation

Judge Dries first addressed the defendant's discussion of probable cause. Dkt. No. 56 at 7. Judge Dries explained that the "sufficient nexus" principle is another way of saying that the warrant must "allege specific facts and circumstances that reasonably lead to the belief that the items sought in the search warrant are likely to be located in the place to be searched." Id. (quoting United States v. Hobbs, 509 F.3d 353, 361 (7th Cir. 2007)). Judge Dries noted that the Seventh Circuit does not require "direct evidence linking a crime to a particular place," but provides that judges asked to issue warrants may draw reasonable inferences. United States v. Zamudio, 909 F.3d 172, 175-76 (7th Cir. 2018).

Judge Dries found that the affidavit provided the issuing judge with sufficient information to conclude with a fair probability that evidence of a crime could be found in the defendant's alleged Snapchat accounts. Dkt. No. 56 at 8. First, the affidavit provided information showing that the defendant was an active drug dealer. Id. Judge Dries observed that Sheldon Resop was "certain" that the defendant was the shooter because Resop owed the defendant money for a cocaine deal and the defendant had sent a text to Resop stating "don't f*** with my money G." Id. (citing dkt. no. 38-1 at 7). He said, "statements from an individual, who admitted to helping [the defendant] and Omar Sosa (the getaway driver) destroy evidence related to the shooting, corroborated the fact that [the defendant] shot at the duplex in retaliation for [Resop's] failure to pay up." Id. Judge Dries described that the investigation

10

had revealed that the defendant was closely associated with the Sosa brothers who were "credibly believed to be operating a large-scale DTO in the Sheboygan area." Id. Agent Carroll knew from a prior investigation that the defendant had a history of drug and firearm offenses. Id. at 8-9.

Second, Judge Dries found that under the totality of the circumstances, the issuing judge "reasonably drew the inference that there was a fair probability that evidence relating to the shooting and the trafficking of drugs would be found" in the defendant's Snapchat accounts. Id. at 9. He recounted that the affidavit indicated that the Sosa brothers communicated via Shapchat about the investigation after the shooting and that the defendant used Snapchat to communicate with others. Id. Judge Dries conceded that the affidavit didn't specifically tie the defendant's use of Snapchat to criminal activity; Judge Dries concluded, however, that such a connection wasn't necessary where the affidavit provided information about the defendant's associates using Snapchat to conduct business and the defendant's use of Snapchat. Id. He observed that officers had information linking the defendant to two specific Snapchat names. Id. at 9-10.

Judge Dries rejected the defendant's argument that the time frame for the requested records was not connected to the drive-by shooting. Id. According to Judge Dries, police not only were looking at the shooting but the illegal drug-trafficking activity in general. Id. at 10. He pointed that the defendant had not explained "why it would be unreasonable to believe that evidence of drug activity would exist as early as January 2018." Id. Judge Dries also rejected the

11

defendant's argument that a probable cause finding in this case amounted to a categorical rule allowing the search of social media accounts whenever a suspect is implicated in drug activity. Id. Judge Dries explained that his probable cause finding was based on the particular facts and circumstances of this case. Id.

Addressing the defendant's attack on the reliability of the informants, Judge Dries explained that the Seventh Circuit applies the Illinois v. Gates totality-of-the-circumstances test. Id. at 11 (citing Glover, 755 F.3d at 816. That test requires the court to consider five factors: "the level of detail, the extent of firsthand observation, the degree of corroboration, the time between the events reported and the warrant application, and whether the informant appeared or testified behind the magistrate." Id. (quoting Glover, 755 F.3d at 816). Applying these factors, Judge Dries noted that the informants had provided two pieces of information: (1) that the defendant used Snapchat to communicate with others around the time of the shooting; and (2) the defendant's Snapchat names. Id. He observed that the first informant—the defendant's alleged girlfriend—had provided the information less than four weeks after the shooting and had said she communicated with the defendant using the name Zaethekid. Id. at 11-12. He observed that this was based on first-hand knowledge provided about eleven weeks before the affidavit. Id. at 12.

Judge Dries explained that the second informant also had provided the defendant's Snapchat name, although he said the defendant used

12

"Zaetheman." Id. at 12. He described how Agent Carroll had said the second informant was known to law enforcement and had provided reliable information in the past. Id. He recounted that the second informant had said that he or she had seen the defendant in Milwaukee in July 2019, which helped pin down the date of the interview to sometime after that date but before the August 14, 2019 date the affidavit was submitted. Id. Finally, Judge Dries found sufficient similarity between the two names; the root of both was "Zae," a common nickname for Isaiah. Id. Judge Dries opined that it would not be unreasonable for the defendant to be using multiple cellphones and multiple accounts (particularly given that the informants had said as much). Id.

Judge Dries rejected the defendant's argument that the affidavit's allegedly general and conclusory statements about Snapchat did not support a finding of probable cause. Id. at 13. He concluded that the affidavit explained why Snapchat is popular with drug dealers, indicated that the defendant was using Snapchat around the time of the shooting and identified at least two associates in the Sosa DTO who were using Snapchat. Id. at 13-14.

As for the good-faith exception, Judge Dries determined that he would have denied the motion even if the warrant were invalid because the defendant had failed to rebut the presumption that the executing officers relied on the warrant in good faith. Id. at 15. He explained that the affidavit contained information beyond what the defendant cited, linked the defendant to criminal activity and provided reasonable information regarding where evidence could be found. Id. Judge Dries found that even if the affidavit could have done more

13

to link the defendant's use of Snapchat to the crimes under investigation, the affidavit gave rise "to some degree of probable cause" and therefore that the good-faith exception saved the warrant. Id. at 16.

D.  Objection

In his objection, the defendant reiterates the arguments he made in the motion to suppress. Dkt. No. 59. He maintains that the warrant was overbroad and amounted to a general warrant, and that the supporting affidavit failed to show a substantial basis to find probable cause. Id. at 1.

Specifically, the defendant attacks Judge Dries' findings that the warrant established probable cause to believe the defendant committed the drive-by shooting and was involved in the distribution of controlled substances. Id. at 2. According to the defendant, a "sufficiently specific affidavit will not itself cure an overbroad warrant." Id. (quoting United States v. George, 975 F.2d 72, 76 (2d Cir. 1992)). Along the same lines, he argues that there was no nexus between the crimes and the accounts. Id. at 2-3. He asserts that the affidavit referenced the accounts in only two sentences. Id. at 3. The defendant argues that Judge Dries incorrectly relied on the fact that the defendant's "own associates used Snapchat to conduct business." Id. (quoting Dkt. No. 56 at 9). Finally, the defendant argues that Judge Dries overlooked the fact that the informants lacked reliability, veracity and a basis for their knowledge; he asserts that they provided no detail about his Snapchat activity, that they had no firsthand knowledge that he used his Snapchat accounts for criminal activity, that there was no corroboration for the informants' information, that

14

the affidavit did not provide detail about when law enforcement met the anonymous informant (and thus, the defendant argues, that the information was stale) and that the informants did not testify before the issuing judge. Id. at 4-6.

The defendant argues that the good-faith exception is inapplicable; he asserts that the magistrate "wholly abandoned his role" or otherwise failed to perform his neutral and detached function, and that the affidavit was so lacking the indicia of probable cause as to make official belief in its existence entirely unreasonable. Id. at 7. The defendant argues that no reasonable officers would have found probable cause based on the "brief two sentences provided in the affidavit." Id. at 8.

### III. Analysis

The Fourth Amendment states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists when, "based on the totality of the circumstances, the affidavit sets forth evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." United States v. McMillian, 786 F. 3d 630, 639 (7th Cir. 2015). The judge must only "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

15

Illinois v. Gates, 462 U.S. 213, 238 (1983). This court affords deference to the probable cause finding by the judge who issued the warrant. Id., 462 U.S. at 236.

This court agrees with Judge Dries that the totality of the circumstances provided sufficiently reliable information to support the finding of probable cause and the issuance of the warrant. Carroll's rolling affidavit provided the requisite background information, dkt. no. 38-1 at ¶¶1, 2, 3; established Carroll's prior knowledge of the defendant's drugs/gun activity, id. at ¶15; linked the defendant to the drive-by shooting and the subsequent destruction of evidence, id. at ¶¶11, 28; described the larger drug investigation and evidence uncovered through knock and talk and warrants served on residences at addresses associated with the Sosa brothers, id. at ¶¶31, 35, 36; tied the defendant to the use of two Snapchat accounts (specifically identifying the usernames) used around the time of the shooting, id. at ¶¶46, 47; and explained why evidence might be found the accounts, id. at ¶78. Specifically with respect to the Snapchat records, Carroll explained how Snapchat is used—that it is "increasing in popularity by persons involved with drug distribution as a secure means of communicating with sources of supply and customers"—and he identified Omar Sosa's account, Irwin Sosa's account, Saul Sosa's account and the defendant's two accounts. Dkt. No. 38-1 at ¶78. Carroll explained that "the information sought from Snapchat [would] assist in identifying communication detail and in linking, connecting and corroborating people as part of the DTO and shooting investigation." Id. Carroll also

16

Illinois v. Gates, 462 U.S. 213, 238 (1983). This court affords deference to the probable cause finding by the judge who issued the warrant. Id., 462 U.S. at 236.

This court agrees with Judge Dries that the totality of the circumstances provided sufficiently reliable information to support the finding of probable cause and the issuance of the warrant. Carroll's rolling affidavit provided the requisite background information, dkt. no. 38-1 at ¶¶1, 2, 3; established Carroll's prior knowledge of the defendant's drugs/gun activity, id. at ¶15; linked the defendant to the drive-by shooting and the subsequent destruction of evidence, id. at ¶¶11, 28; described the larger drug investigation and evidence uncovered through knock and talk and warrants served on residences at addresses associated with the Sosa brothers, id. at ¶¶31, 35, 36; tied the defendant to the use of two Snapchat accounts (specifically identifying the usernames) used around the time of the shooting, id. at ¶¶46, 47; and explained why evidence might be found the accounts, id. at ¶78. Specifically with respect to the Snapchat records, Carroll explained how Snapchat is used—that it is "increasing in popularity by persons involved with drug distribution as a secure means of communicating with sources of supply and customers"—and he identified Omar Sosa's account, Irwin Sosa's account, Saul Sosa's account and the defendant's two accounts. Dkt. No. 38-1 at ¶78. Carroll explained that "the information sought from Snapchat [would] assist in identifying communication detail and in linking, connecting and corroborating people as part of the DTO and shooting investigation." Id. Carroll also

explained that the date range would provide him with "account creation dates to assess further evidence requests, provide baseline context into the accounts and their user(s), and identify the frequency of communications between subjects with the DTO and other unidentified subjects leading to the possibility of further investigation into the parties involved with the DTO." Id. at ¶79.

The defendant attacks the recommendation, arguing that the affidavit failed to (1) establish probable cause to believe the defendant committed the drive-by shooting and was involved in the distribution of controlled substances; (2) establish a nexus between the crimes and the Snapchat accounts; (3) link him to either Snapchat account; or (4) establish that either informant was reliable. These are the same arguments he raised in the motion to suppress—arguments rejected by Judge Dries. As explained above, Carroll provided sufficient probable cause to believe the defendant committed the shooting, with statements from the victim, id. at ¶11, and from Becerra, the individual tasked with destroying/concealing evidence and the known associate observed leaving the defendant's house, id. at ¶28. The evidence further linked the defendant to the distribution of drugs; there was a statement by the victim of the shooting who admitted he owed the defendant money for a drug deal. Id. at ¶11. The evidence in the affidavit linked the defendant's criminal activity to his cell phone, id. at ¶¶71, 72, and two individuals, including a girlfriend, identified his Snapchat usernames used at the time of the criminal activity, id. at ¶¶46, 48.

The defendant's attacks on the informants' reliability similarly fails. When evaluating the totality of the circumstances in informant cases, the

17

Seventh Circuit has developed five primary factors considered along with other pertinent concerns: level of detail, extent of firsthand observation, degree of corroboration, the time between the events reported and the warrant application and whether the informant appeared or testified before the magistrate. Glover 755 F.3d at 816. While there is no evidence that anyone appeared or testified before the magistrate, the first person providing the defendant's Snapchat name was the defendant's girlfriend, who discussed the relationship, said she slept at the defendant's on the night of the shooting and described a conversation between Omar and the defendant. Dkt. No. 38-1 at ¶46. She gave the interview within four weeks of the drive-by shooting and just three months before the affidavit was requested. Id. The second informant, who preferred to remain anonymous, was known to officers and had provided reliable and accurate information in the past. Id. at ¶39. That individual had seen the defendant in Milwaukee in July 2019 and confirmed that the defendant used Snapchat, providing a username remarkably like the one provided by the defendant's girlfriend. Id. The informant provided that information sometime between July 2019 and the August 14, 2019 application date. Id.

Ultimately, the court would have denied the motion to dismiss under the good-faith exception even if the court agreed with the defendant as to the affidavit. "Overcoming the presumption of good faith is no small feat, as an officer cannot ordinarily be expected to question a judge's probable cause determination." United States v. Lickers, 928 F.3d 609, 619 (7th Cir. 2019).

18

Carroll outlined multiple sources of information from the investigation of the drive-by shooting and the DTO; the defendant's girlfriend and an informant—previously found to be reliable—provided the defendant's Snapchat usernames, linked the use of the accounts to the time of the shooting and tied the defendant to a DTO whose members used Snapchat. As the Seventh Circuit has recognized, "[a]t its core, Leon is about encouraging responsible and diligent police work" and here "[e]very indication from the record is that the [ ] agents sought and executed the warrant in good faith." Id. at 620 (quoting United States v. Leon, 468 U.S. 897, 912 (1984)).

IV. **Conclusion**

The court **ADOPTS** Judge Dries's recommendation deny the defendant's motion to suppress. Dkt. No. 56.

The court **DENIES** the defendant's motion to suppress. Dkt. No. 38.

The court **ORDERS** that on or before the end of the day on **February 25, 2022**, the parties must file a status report advising the court of their anticipated next steps—whether the court should calendar a scheduling conference to set trial dates or whether they anticipate that the defendant will resolve the case short of trial.

Dated in Milwaukee, Wisconsin this 24th day of January, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER
Chief United States District Judge**